UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XELUS, INC.,
CLICK COMMERCE, INC.,

                                Plaintiffs,

                                                                   <u>DECISION AND ORDER</u>

                                                                   05-CV-6294L

                                v.

SERVIGISTICS, INC.,

                                Defendant.
_____

     On June 6, 2005, plaintiffs, Xelus, Inc. and its parent corporation Click Commerce, Inc. ("Click"), filed a complaint in this action, along with a motion for a temporary restraining order ("TRO") and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. In short, plaintiffs allege that defendant, Servigistics, Inc., which is a competitor of Xelus in the inventory management software industry, has been disseminating false and defamatory information about Xelus to Xelus's business partners, customers, and prospective customers, thereby threatening Xelus's relationships with those entities. Plaintiffs seek to enjoin Servigistics from continuing to engage in such activities, and from making any statements in commerce or trade concerning certain matters pertaining to Xelus and Click.

Plaintiffs have submitted various materials in support of their motion, and defendant has also submitted by fax some materials in opposition to the motion. The Court spoke with counsel for both sides concerning the motion in a telephone conference on June 7. After considering the parties' submissions and the comments of counsel, the Court grants plaintiffs' motion in part, and denies it in part, as set forth below.

## DISCUSSION

In order to obtain a TRO, plaintiffs must show: (1) that absent such an order, they are likely to suffer irreparable harm; and (2) either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor." *In re Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 416 (2d Cir. 1985) (citations omitted); *see also Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

The Second Circuit has deemed the threshold showing of "irreparable harm" to be of particular significance under Rule 65, regardless of the strength of the movant's case on the merits. *See*, *e.g.*, *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("a showing of probable irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction'") (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983)). Accordingly, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by

monetary damages." *Reuters*, 903 F.2d at 907 (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989)). With respect to commercial torts, the Court of Appeals for the Second Circuit has held that losses that are difficult to quantify can constitute irreparable harm. *See Gerard et al. v. Almouli*, 746 F.2d 936, 939 (2d Cir. 1984) ("The likelihood of irreparable harm was demonstrated since appellees' damages may not be quantified").

In the case before me, I find that plaintiffs have adequately shown a likelihood of imminent irreparable harm to warrant the issuance of a TRO as to certain acts of defendant and its employees. At the same time, however, I find that there are issues of fact that preclude the issuance of a preliminary injunction at this point.

Plaintiff has submitted some documentary evidence that Servigistics has contacted one of Xelus's business partners, Oracle, Inc., and implied that Click's acquisition of Xelus would impair Xelus's ability to adequately service its customers. In one e-mail message to Oracle, for example, Servigistics stated that Click's acquisition of Xelus was "a classic stock roll-up play" and that Click typically "acquires a company, lays off half the staff, mines the revenue stream, and moves on to the next acquisition." Plaintiff's Memorandum of Law (Dkt. #3) Ex. A. Servigistics does not appear to deny that it sent these messages. In addition, in a complaint filed against Xelus and Click in a Georgia state court on June 3, 2005, Servigistics seeks a declaration that its "continued communication ... with customers and potential customers within the industry currently served by ... Xelus ... is proper ... ." Plaintiff's Memorandum of Law Ex. H ¶ 23.

Plaintiffs have also shown a likelihood of irreparable harm absent the issuance of a TRO. Xelus (together with Oracle) is apparently in the midst of contract talks and bidding processes with

a number of entities, including American Airlines and the United States Air Force. Decisions on who will be awarded these contracts–which are potentially worth millions of dollars–are allegedly expected to be announced soon. If in fact Servigistics is disseminating false, disparaging information about Xelus, that could hurt Xelus's chances of securing those contracts.

Although the damages flowing from loss of a given contract may in some instances be calculable, such a calculation might be much more difficult where the contractual relationship would have lasted for many years (the Air Force contract would run for six years), or where the contracting parties could reasonably have been expected to maintain a long-term relationship. *See*, *e.g.*, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (injunctive relief is appropriate where it would be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); *see also Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 154 F.Supp.2d 570, 584 (S.D.N.Y. 2001) ("Although the loss of these contracts may not destroy Alcatel's business, the limited number of satellite opportunities available warrants a finding of irreparable harm"), *aff'd*, 25 Fed.Appx. 83 (2d Cir. 2002).

In addition, the Second Circuit has recognized that damage to one's business reputation and loss of customer goodwill can constitute irreparable harm. *See*, *e.g.*, *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("the district court did not abuse its discretion in finding that, unless specific relief were granted, Verio's actions would cause Register irreparable harm through loss of reputation, good will, and business opportunities"); *see also TVT Records v. Island Def Jam*

*Music*, 225 F.Supp.2d 398, 405 (S.D.N.Y. 2002) ("Beyond losses, the Second Circuit regards damage to business relationships significant") (citing *Reuters*, 903 F.2d at 907-909).

Servigistics' alleged disparaging comments about Xelus could certainly cause such damage. In fact, apparently in reaction to an e-mail message from Servigistics in which Servigistics stated that it had been awarded the American Airlines contract over Xelus, *see* Plaintiffs' Memorandum of Law Ex. A, Oracle sent Xelus an e-mail message stating, "You loss [sic] AMERICAN? I thought this was in the bag for you guys! And is this true about Click Commerce being a gut and sell company? If this is true, then we have a problem." Plaintiffs' Memorandum of Law Ex. E. Oracle also stated that if these things were true, "we need to understand and re-evaluate our options." *Id.* Although Xelus apparently took steps to reassure Oracle about these matters, this does indicate that Servigistics' negative statements about plaintiffs were not without effect.

There is evidence before me, then, that Servigistics has engaged in some of the conduct alleged in the complaint, and that Xelus faces irreparable harm as a result. As stated, however, there are also some factual disputes here. In particular, although Servigistics does not appear to deny that it has made some of the alleged communications with Oracle and others, Servigistics maintains that its statements about plaintiffs are true. Servigistics has submitted some evidence in support of that assertion, including a report by an independent industry research and analysis firm, AMR Research, which states that Xelus has had certain problems recently and has lost market share, and suggesting uncertainty, if not doubt, about whether Click's acquisition of Xelus will benefit Xelus or its customers. Thus, it appears that there may be a legitimate basis for Servigistics' suggestion that Xelus faces an uncertain future.

These factual disputes preclude the issuance of a preliminary injunction at this time, and instead require the Court to hold a prompt hearing before deciding whether to grant an injunction. "The existence of factual disputes necessitates an evidentiary hearing ... before a motion for a preliminary injunction may be decided." *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (quoting *Commodity Futures Trading Comm'n v. Incomco, Inc.*, 649 F.2d 128, 131 (2d Cir. 1981)).

The purpose of a temporary restraining order, however, is simply "to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan Amer. World Airways, Inc. v. Flight Engineers' Intern. Ass'n*, 306 F.2d 840, 842 (2d Cir. 1962); *see also LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994) ("To preserve the status quo a court may require the parties to act or to refrain from acting"); *see, e.g.*, *AIM Intern. Trading LLC v. Valcucine SpA.*, 188 F.Supp.2d 384, 388 (S.D.N.Y. 2002) (issuing TRO to preclude defendant supplier from terminating exclusive distributorship agreement, since plaintiff distributor was likely to suffer irreparable harm as result of supplier's allegedly improper termination of agreement).

Accordingly, the Court will issue a TRO enjoining Servigistics from engaging in engaging in the types of wrongful conduct alleged in the complaint, pending a hearing on plaintiffs' motion for a preliminary injunction. The Court will not, however, issue all of the relief sought by plaintiffs in their proposed TRO, which I believe is overbroad in some respects. For example, plaintiffs would have the Court enjoin Servigistics from "making *any* statements in commerce or trade about Click's plans with regard to Xelus ... ." (Emphasis added.) Such a restriction would, I believe, impermissibly and unjustifiably impinge on Servigistics' right to commercial speech. The terms of

the TRO, then, will be more limited than plaintiffs have proposed, as set forth in the Conclusion of this Decision and Order.

## CONCLUSION

Plaintiffs' motion for a temporary restraining order and a preliminary injunction, and for an expedited hearing (Dkt. #2) is granted in part and denied in part.

Defendant Servigistics, Inc. is hereby enjoined from making any false or misleading statements or factual representations about plaintiffs' business or about plaintiffs' employees, agents, or representatives. Defendant is further enjoined from engaging in any activity to induce plaintiff Xelus, Inc.'s employees to breach their contractual obligations to Xelus.

Plaintiffs must file any additional papers regarding their motion for a preliminary injunction no later than ten (10) days after the date of issuance of this Decision and Order. Defendants must file their reply no later than ten (10) days after their receipt of plaintiffs' papers.

A hearing on plaintiffs' motion for a preliminary injunction will be held on July 6, 2005 at 9:00 a..m.

In all other respects, plaintiffs' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 8, 2005.

.

Case 6:05-cv-06294-DGL   Document 4   Filed 06/08/2005   Page 8 of 8